UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE MICHELLE HESS, | ) | CIVIL ACTION NO. 4:20-CV-2429 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Marie Michelle Hess, an adult individual who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.     BACKGROUND & PROCEDURAL HISTORY

On March 11, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 12).  In these applications, Plaintiff alleged she became disabled on August 1, 2012, when she was forty years old, due to the following conditions: bipolar disorder; anxiety; and PTSD. (Admin. Tr. 220). Plaintiff alleges that the combination of these conditions affects her ability to talk, hear, remember/memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 231). Plaintiff attained her J.D. in 2018.

On June 28, 2019, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 12). On November 6, 2019, the applications

were denied on reconsideration. *Id.* On the same day, Plaintiff requested an administrative hearing. *Id*.

On April 7, 2020, Plaintiff, assisted by her counsel, appeared and testified during a telephone hearing before Administrative Law Judge Lawrence J. Neary (the "ALJ"). *Id.* On April 24, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 26).

On April 27, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 186).

On November 3, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On December 28, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court enter an order awarding benefits. *Id*.

On June 30, 2021, the Commissioner filed an Answer. (Doc. 16). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and

regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 19) and the Commissioner's Brief (Doc. 22) have been filed. Plaintiff did not file a reply. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.

*Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on April 24, 2020.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following issues in her Statement of Errors:

(1)   Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in plaintiff's residual functional capacity from obesity, asthma, bi-polar II disorder, generalized anxiety disorder, social anxiety disorder, and PTSD;

(2)   Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations in Plaintiff's residual functional capacity with regards to arthritis in her knees, back pain, right shoulder pain, GERD, and insomnia, which were incorrectly considered to be non-severe impairments;

(3)   Whether the Administrative Law Judge erred and abused his discretion in setting forth Plaintiff's residual functional capacity in light of the opinions of Kelly Hammarberg and Marianys Delgado, treating sources who completed Mental Residual Functional Capacity Evaluations, and the Consultative Examiner, Dr. Kneifati, whose opinions were not afforded sufficient weight, as opposed to the opinion of the state agency psychological consultants.

(Doc. 19, pp. 1-2).

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his April 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016. (Admin. Tr. 14). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 1, 2012 (Plaintiff's alleged onset date) and April 24, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 14). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obesity, asthma, bipolar II disorder, generalized anxiety, social anxiety disorder, and PTSD. (Admin. Tr. 14). The ALJ also identified the following medically determinable non-severe impairments: GERD, and knee arthritis. (Admin. Tr. 15). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except with:

> no climbing of ladders, ropes or scaffolds, no exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases and poor ventilation, and hazards, such as machinery and heights, and further limited to simple, routines tasks with only occasional interaction with the public and supervisors.

(Admin. Tr. 17).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 25). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 25-26). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following two (2) representative occupations: small products assembler, DOT #729.687-010; and parts assembler, DOT #706.684-022. *Id*.

B.    THE ALJ'S RFC ASSESSMENT DOES NOT MATCH THE HYPOTHETICAL POSED TO THE VOCATIONAL EXPERT

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> So, we're gonna assume a hypothetical individual, same age and education as the claimant, with no past relevant work, and let's further assume this individuals is limited to, and this'll be hypothetical number one, limited to light work ***with a sit stand option in place, at will,*** with only occasion, and limited to only occasional postural activities, with no climbing of ladders, ropes, scaffolds. No exposure to extreme heat and cold, humidity, fumes, odors, dust, gasses and poor ventilation and hazards such as machinery and heights and is further limited to simple routine tasks, with only occasional interaction with the public supervisors and coworkers. Now, would that hypothetical individual be able to perform any work that exist in the national economy and if so, could you give be a few examples with the number of jobs for each occupation?

(Admin. Tr. 63-64) (emphasis added).

In response, the VE testified:

> Yes, and some examples include each being like an unskilled SVP of 2, be small products assembler, small products assembler, DOT 739.687-030, 48,000 in the national economy. Also an electrical assembler. Electrical assembler, DOT 729.687-010, 39,000 in the national economy and a parts assembler, parts assembler DOT 706.684-022, 49,000 in the national economy.

(Admin. Tr. 64).

> In his decision, the ALJ found:

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders, ropes or scaffolds, no exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases and poor ventilation, and hazards, such as machinery and heights, and further limited to simple, routine tasks with only occasional interaction with the public and supervisors.

(Admin. Tr. 17). Notably, the RFC assessment in the ALJ's decision excludes the following limitations set out in the hypothetical question: sit and stand at will; only occasional postural activities; and only occasional interaction with coworkers. Nonetheless, the ALJ relied on the VE's testimony to support the above-quoted RFC assessment and concluded that Plaintiff would be able to perform the occupations of small products assembler (DOT #739.687-030), electrical assembler (DOT #729.687-010), and parts assembler (DOT #706.684-022). (Admin. Tr. 25).

It is well-established in the Third Circuit that, where a VE's testimony forms the basis of an ALJ's substantial evidence determination, the hypothetical question

which elicited the VE's response must accurately reflect all of a claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (*quoting Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002)). In this case, the VE's response that Plaintiff can do other work is based on additional restrictions that were not included in the ALJ's RFC assessment. No party has addressed whether remand is required because the hypothetical question imposes additional limitations that were then excluded from the ALJ's RFC assessment. However, I find that this error is harmless in this case.

Remand is not required unless there is reason to believe that it might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *see also Snedeker v. Colvin*, No. 3:13-CV-970, 2015 WL 1126598 at *7 (N.D. N.Y. Mar. 12, 2015) ("a reviewing court must reverse and remand when an administrative law judge errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error. In other words, administrative legal error is harmless when a reviewing court confidently concludes that the same result would have been reached had the error not occurred.") (internal citations omitted). In this case, the VE testified that, even if Plaintiff were more limited, she could still engage in other work. Therefore, the ALJ's failure to include a sit/stand option, a limitation to occasional postural activities, and a limitation to only

occasional interaction with coworkers in the RFC assessment articulated in the decision is harmless.

C.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE

The following sources submitted opinions or issued administrative findings in connection with this case: consultative examiner Stacy Trogner, Psy.D.; consultative examiner Ahmed Kneifati, M.D.; state agency psychological consultant Richard Small, Ph.D.; state agency psychological consultant Richard Williams, Ph.D.; state agency medical consultant Ruth Arnold, D.O.; Kelly Hammarberg, CRNP; and Marianys Delgado, NP. The ALJ found that non-treating sources Trogner, Small, Williams, and Arnold's opinions were "persuasive." The ALJ found that treating sources CRNP Hammarberg and NP Delgado's opinions were "not persuasive." The ALJ also found that Dr. Kneifati's opinion was "not persuasive." Plaintiff challenges the ALJ's evaluation of CRNP Hammarberg, NP Delgado, and Dr. Kneifati's opinions.

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities" as:

    (i)    [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

    (ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

    (iii)    [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

    (iv)    [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 416.913(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d); 20 C.F.R. § 416.902(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

The Commissioner's regulations define "prior administrative medical findings" as:

> (5)   Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
> (i)   The existence and severity of your impairment(s);
>
> (ii)   The existence and severity of your symptoms;
>
> (iii)   Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
> (iv)   Your residual functional capacity;
>
> (v)   Whether your impairment(s) meets the duration requirement; and
>
> (vi)   How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(5); 20 C.F.R. § 416.913(a)(5).

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the

extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Plaintiff argues that the ALJ improperly discounted opinions by Marianys Delgado, Kelly Hammarberg, and Ahmed Kneifati. Specifically Plaintiff contends:

> The ALJ gives little weight to the opinions of Claimant's Treating Sources, including Marianys Delgado - TW Ponessa, and Kelly Hammarberg - Wellspan Philhaven, who has treated Claimant on a regular basis since September 10, 2013, and performed full psychiatric evaluations on Claimant, and is the only one who is capable of offering an opinion based upon observations in treatment over an extended period of time. (Admin Tr. 447-450 and 818-828). Both treating sources agree upon the following limitations, which would render Claimant unemployable: (1) marked limitations in understanding, remembering and applying information, including

problem-solving, (2) marked limitations in interacting with others, including conflict with co-workers, keeping social interactions free from excessive irritability and being able to respond to criticism, (3) marked limitations in adapting and managing oneself, including managing psychological symptoms, adapting to changes and working independently, (4) marked limitations in sustained concentration, persistence and pace, including working while ignoring distractions, working at a reasonable pace, working without distracting others, working without being disruptive, maintaining regular attendance, and completing a workday without the need for additional breaks, (5) she would be off task more than 20% of the workday, and (6) she would miss work more than one day per week. (Admin Tr. 818-828). A review of Claimant's Work History Report reveals a job history that shows that she has held only a few jobs for very short periods of time, which further confirms her inability to retain employment, and the existence of the limitations noted by her treating sources. The ALJ offers little analysis of the treating source opinions, using the factors to be considered by the ALJ. (Admin Tr. 21 and 23-24).

The ALJ also erred in failing to consider the limitations set forth by the Consultative Exam Physician, Dr. Kneifati, who is the only medical opinion who provides exertional limitations for Claimant, which would render the Claimant unable to sustain competitive employment, per the Vocational Expert, as a result of his findings regarding Claimant's ability to walk/sit/stand. (Admin Tr. 20, 22, 65, 476 and 480). In addition, the ALJ erred in finding that on one hand that while Dr. Kneifati's opinions were persuasive and given weight in consideration of Claimant's RFC, while at the same time discounting all findings and opinions from Dr. Kneifati regarding Claimant's limitations that support a finding that Claimant cannot engage in sustained work activity and which conflict with the ALJ's own opinions regarding Claimant's exertional limitations in terms of her RFC.

(Doc. 19, p. 24).

In response, the Commissioner argues:

Plaintiff argues that the ALJ should have given greater "weight" to the opinions of her treating sources and Dr. Kneifati, citing to the Commissioner's regulations at 20 C.F.R. 404.1527(c)(2) (P. Bf. 20-24; Tr. Tr. 479-84, 818-23, 824-28). These regulations do not apply to the present claim, which was filed in March 2019 and implicates the Commissioner's revised regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. In keeping with the revised regulations, the ALJ did not assign degrees of weight to the opinions, but rather discussed the supportability and consistency of each opinion based upon the evidence in the record (Tr. 21-24). Because the ALJ properly applied the correct regulations and fully supported his analysis of the opinions, Plaintiff's arguments fail.

For claims filed on or after March 27, 2017, the agency revised the regulations that govern the consideration of medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the revised regulations do away with any hierarchy among opinions, and opinions from different sources stand on equal footing, regardless of relationship. Id.

Instead of assigning weight to medical opinions or prior administrative medical findings, the ALJ considers several potentially relevant factors (supportability, consistency, relationship with the claimant, specialization, and other factors) and assesses the persuasiveness of the evidence. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). In this analysis, the most important factors are supportability and consistency. Id. at § 404.1520c(b)(2); 416.920c(b)(2). The ALJ may, **but is not required**, to discuss the remaining factors, unless he finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

In light of this framework, the ALJ was not required to give any special deference to the opinions of NP Hammarberg or NP Delgado based upon their status as treating providers, and the ALJ explained why he found them unpersuasive (Tr. 23-24; Tr. 818-23, 824-28). Specifically, the ALJ found these opinions were not supported by the largely normal mental status findings in the record, including those documented by NP Hammarberg and NP Delgado (Tr. 23-24; Tr. 502, 512, 516, 520, 524, 528, 841, 846, 853, 857, 861, 865, 870, 874, 878, 882, 886, 890, 894, 898, 902, 906, 911, 914). Additionally, the ALJ found the opinions of Dr. Trogner, Dr. Small and Dr. Williams were all better supported by the largely normal examination findings, and were also more consistent with Plaintiff's reported ability to cook, clean, do laundry, drive, shop, manage her money, get coffee weekly with friends, and obtain a law degree, albeit with some disruptions (Tr. 21-22; Tr. 44-45, 57-59, 226-33, 430-31). Accordingly, the ALJ fully explained why he found these opinions unpersuasive, in accordance with the regulatory standards.

As for Dr. Kniefati's opinion, the ALJ found it was unsupported by Dr. Kniefati's own examination findings which included a normal gait and no neurological deficits, and the normal left knee X-ray performed at the examination (Tr. 22; Tr. 478, 479-84). The ALJ also observed elsewhere in the decision that other physical examination findings had generally been normal (Tr. 18, 19; Tr. Tr. 275, 279, 283, 285, 290, 296, 302, 304-05, 307, 309, 312-13, 327). Accordingly, the ALJ fully supported his finding that Dr. Kniefati's opinion was not persuasive, and that Dr. Arnold's less-restrictive opinion was better supported and more consistent with the evidence (Tr. 22; Tr. 95-97).

(Doc. 22, pp. 22-25).

1.      Whether the ALJ Adequately Explained His Evaluation
of CRNP Hammarberg and NP Delgado's Opinions

In this case, the ALJ found that Plaintiff had medical determinable mental impairments of Bipolar II Disorder, Generalized Anxiety Disorder, Social Anxiety Disorder, and PTSD. (Admin. Tr. 14).

In 2013, Plaintiff was newly divorced, parenting a teenager, and was in her second year of law school.[3] In that year, she began to experience increased symptoms of anxiety and depression. In April 2013, treatment notes suggest Plaintiff considered taking medical leave from school. In June 2013, Plaintiff's daughter's therapist referred Plaintiff to an intensive outpatient program, which she decided to participate in voluntarily. (Admin. Tr. 452). At intake, it was noted that:

> She was casually and appropriately attired. She sat in a chair throughout the interview and was cooperative. Her speech was coherent and goal directed without flight of ideas or loose associations. She denied hallucinations in five senses paranoid ideation or other evidence of a thought disorder. [S]he does report that her mood has been depressed and anxious and her affect was somewhat constricted. She denies any active suicidal or homicidal ideations plans or intent and feels safe at this level of care. Cognitively, she was alert and oriented in three spheres. She demonstrates a good general fund of knowledge. Her insight and judgment are adequate.

---

[3] Due to her impairments, it took Plaintiff approximately seven years to graduate law school, which she did in 2018. (Admin. Tr. 39-40, 43). Plaintiff took a total of five semesters off. (Admin. Tr. 45). Plaintiff did not take the bar exam and has not worked since graduating law school. (Admin. Tr. 39-40).

(Admin. Tr. 455).

On August 16, 2013, Plaintiff was discharged from the intensive outpatient program, and decided to return to law school. (Admin. Tr. 453). On discharge:

> Ms. Hess rated her depression and anxiety at a 2 out of 10, (1=low, 10=high). She denied suicidal intent and plans. She was not homicidal and did not evidence or report any hallucinations. Ms. Hess declined services through Philhaven's benevolent care stating that the driving distance for psychiatry would be too far. It is unclear if she completed paperwork to follow up to apply for funding to obtain outpatient therapy. She reported that she would set up her own medication management; however, she was directed to contact other psychiatrists or to work with her primary care physician regarding the management of her medication.

*Id.*

On September 10, 2013, Plaintiff established care with CRNP Hammarberg to manage her medications. On mental status examination, CRNP Hammarberg noted:

> This is a 41-year-old Caucasian female who presents well groomed, appropriately dressed, no evidence of any abnormal tics or twitches. She had good eye contact throughout the evaluation. Speech was of normal rate, rhythm, tone, and volume. She showed good attention to the interview. Mood was euthymic. Affect was appropriate. No current hallucinations, delusions, compulsions, suicidal or homicidal ideation. She was alert and oriented x3. Judgment was intact. Insight was good.

(Admin. Tr. 981). In October 2013, CRNP Hammarberg noted no abnormal findings. (Admin. Tr. 984). In November 2013, Plaintiff exhibited a depressed

mood and constricted affect. (Admin. Tr. 988). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In December 2013, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 992). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.*

CRNP Hammarberg examined Plaintiff six times in 2014. In February 2014, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 996). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In March 2014, Plaintiff exhibited a depressed mood and constricted and anxious affect. (Admin. Tr. 1000). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In April 2014, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 1004). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In June 2014, all areas assessed, including Plaintiff's mood, affect, thought content, attention, concentration, memory, judgment and insight were normal. (Admin. Tr. 1008). In August 2014, Plaintiff exhibited an anxious mood and anxious affect. (Admin. Tr. 1012). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In November 2014, Plaintiff

exhibited a depressed mood and constricted affect. (Admin. Tr. 1016). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.*

CRNP Hammarberg examined Plaintiff five times in 2015. In February 2015, Plaintiff exhibited a depressed mood and anxious and constricted affect. (Admin. Tr. 1020). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In May 2015, all areas assessed, including Plaintiff's mood, affect, thought content, attention, concentration, memory, judgment and insight were normal. (Admin. Tr. 1023). In August 2015, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 1027). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In October 2015, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 1031). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In November 2015, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 1035). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.*

CRNP Hammarberg examined Plaintiff eight times in 2016. In January 2016, all areas assessed, including Plaintiff's mood, affect, thought content,

attention, concentration, memory, judgment and insight were normal. (Admin. Tr. 870). In March 2016, Plaintiff exhibited an anxious mood and constricted affect. (Admin. Tr. 874). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In April 2016, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 878). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In May 2016, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 882). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In June 2016, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 886). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In July 2016, Plaintiff exhibited an anxious affect. (Admin. Tr. 890). All other areas, including mood, thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In August 2016, Plaintiff exhibited a constricted affect. (Admin. Tr. 894). All other areas, including mood, thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In November 2016, Plaintiff exhibited a depressed mood

and constricted/anxious affect. (Admin. Tr. 898). All other areas, including thought content, attention, concentration, judgment and insight were normal. *Id.*[4]

CRNP Hammarberg examined Plaintiff seven times in 2017. In January 2017, Plaintiff exhibited a constricted affect. (Admin. Tr. 902). All other areas, including mood, thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In February 2017, Plaintiff exhibited a constricted affect. (Admin. Tr. 906). All other areas, including mood, thought content, attention, concentration, judgment and insight were normal. *Id.*[5] In March 2017, Plaintiff exhibited a constricted affect. (Admin. Tr. 906). All other areas, including mood, thought content, attention, concentration, judgment and insight were normal. *Id.*[6] In August 2017, Plaintiff exhibited an anxious mood and constricted affect. (Admin. Tr. 906). All other areas, including mood, thought content, attention, concentration, judgment and insight were normal. *Id.*[7] In October 2017, Plaintiff exhibited an anxious and constricted affect. (Admin. Tr. 865). All other areas, including mood, thought content, attention, concentration, memory, judgment and insight were normal. *Id.* On December 6, 2017, Plaintiff exhibited a constricted affect. (Admin. Tr. 861). All other areas, including mood, thought content, attention, concentration,

---

[4] CRNP Hammarberg did not evaluate Plaintiff's memory in November 2016.
[5] CRNP Hammarberg did not evaluate Plaintiff's memory in February 2017.
[6] CRNP Hammarberg did not evaluate Plaintiff's memory in March 2017.
[7] CRNP Hammarberg did not evaluate Plaintiff's memory in August 2017.

memory, judgment and insight were normal. *Id.* On December 20, 2017, Plaintiff exhibited a depressed/anxious mood, a constricted/anxious affect, and reported two instances of visual hallucinations (one of seeing people at the foot of her bed, one of seeing colors). (Admin. Tr. 857). All other areas, including attention, concentration, memory, judgment and insight were normal. *Id.*

CRNP Hammarberg examined Plaintiff twice in 2018. In April 2018, all areas assessed, including Plaintiff's mood, affect, thought content, attention, concentration, judgment and insight were normal. (Admin. Tr. 853).[8] In June 2018, the treatment record did not include a mental status examination. (Admin. Tr. 849-850). In August 2018, Plaintiff exhibited a constricted affect. (Admin. Tr. 846). All other areas, including mood, thought content, attention, concentration, memory, judgment and insight were normal. *Id.*

CRNP Hammarberg examined Plaintiff four times in 2019. In January 2019, Plaintiff exhibited a depressed mood and constricted affect. (Admin. Tr. 841). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In February 2019, Plaintiff exhibited a depressed/anxious mood and a constricted/anxious affect. (Admin. Tr. 444). All other areas, including thought content, attention, concentration, memory, judgment

---

[8] CRNP Hammarberg did not evaluate Plaintiff's memory in April 2018.

and insight were normal. *Id.* In March 2019, Plaintiff exhibited a depressed/anxious mood and a constricted/anxious affect. (Admin. Tr. 516). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.* In August 2019, Plaintiff exhibited a depressed mood and anxious affect. (Admin. Tr. 512). All other areas, including thought content, attention, concentration, memory, judgment and insight were normal. *Id.*

On January 28, 2020, Plaintiff began treatment with NP Delgado. (Admin. Tr. 824). On mental status exam, NP Delgado noted that Plaintiff is:

> 47 years old Caucasian female, who appears slightly older than her stated age, dressed appropriately, with fair grooming. She is alert, awake, and oriented x 4. She is cooperative and pleasant during the interview. Her eye contact is good. Wears glasses. Her speech is soft non pressured poor dentition. She describes her mood as "up and down". Her affect is euthymic cheerful at times. Her thought process is logical and goal directed. Her thought content demonstrates no signs of delusions or paranoid thinking. She denies any psychotic symptoms or manic episodes. She denies any suicidal or homicidal ideations. Her cognition and memory is good. Her long-term memory is grossly intact. No obvious tremor noted. Her gait is within normal limits. Judgment and insight are fair. No acute evidence of dangerousness noted at this time.

(Admin. Tr. 800).

In 2020, CRNP Hammarberg completed an undated medical source statement. In this medical source statement CRNP Hammarberg was asked to rate Plaintiff's ability to perform certain activities on the following scale: moderate

(fair ability, limitation would cause the patient to be off task 10% of the workday);

marked (seriously limited ability that would cause the patient to be off task 15% of

the workday); and extreme (no ability. The patient would be off task 25% or more

of the workday). CRNP Hammarberg identified "extreme" limitations in the

following areas: ability to ignore or avoid distractions while working; and ability to

work a full day without needing more than the allotted number or length of rest

periods per day. (Admin. Tr. 820-822). CRNP Hammarberg assessed the following

"marked" limitations: ability to handle conflicts with others; ability to initiate or

sustain conversation; ability to keep social interactions free from excessive

irritability, sensitivity, argumentativeness, or suspiciousness; ability to sustain

ordinary routine and regular attendance at work; and ability to adapt to changes. *Id.*

CRNP Hammarberg assessed that these limitations began in 2014. (Admin. Tr.

823).

In the decision, the ALJ found that CRNP Hammarberg's medical source

statement was "not persuasive." In doing so, the ALJ explained:

> This opinion is not persuasive. Ms. Hammarberg's findings regarding
> the claimant's above-noted marked and extreme limitations are not
> consistent with the claimant's mental status examination findings of
> record, including her own exam findings, including her initial
> psychiatric evaluation findings and her most recent/last treatment note
> of record, dated August 20, 2019. Per her treatment note, the
> claimant's worsening anxiety with complaints of ongoing social
> anxiety and increased stress secondary to visiting family but with

improving depression and mood swings. Aside from the claimant's anxious mood and affect, Ms. Hammarberg found that the claimant presented with logical thought content, good recent and remote memory, sufficient attention, adequate concentration, intact judgment, and adequate insight. She also noted that the claimant reported sleeping 9 hours a night and that she was doing volunteer work, two hours per week (Exhibits 3F, 6F, 15F, and 16F).

*Id.*

On March 12, 2020, NP Delgado completed a medical source statement. On the form, NP Delgado was asked to rate Plaintiff's ability to perform certain activities on the same scale used by CRNP Hammarberg. NP Delgado did not identify any "extreme" limitations. NP Delgado identified the following "marked" limitations: ability to identify and solve problems; ability to sequence/complete multi-step activities; ability to handle conflicts with others; ability to respond appropriately to requests suggestions, criticisms, correction and challenges; ability to keep social interactions free from excessive irritability, sensitivity, argumentativeness, or suspiciousness; ability to work at an appropriate and consistent pace; ability to ignore or avoid distractions while working; ability to change activities or work settings without being disruptive; ability to work close to or with others without interrupting or distracting them; ability to work a full day without needing more than the allotted number or length of rest periods during the day; ability to respond to demands; ability to adapt to changes; ability to manage

psychologically-based symptoms; and ability to make plans for yourself independently of others. (Admin. Tr. 825-828).

The ALJ found that NP Delgado's medical source statement was not persuasive. In doing so, he explained:

> This opinion is not persuasive. Like Ms. Hammarberg, Ms. Delgado's opinion regarding the above indicated marked limitations is not consistent with the claimant's mental status examination findings of record, including her own exam findings. As noted above, her January 2020 evaluation including the claimant's reported history and ongoing subjective complaints. However, she found that the claimant presented with fair grooming and was cooperative and pleasant with good eye contact, non-pressured speech, a euthymic, cheerful mood at times, logical and goal directed thought process, good cognition and memory, grossly intact long-term memory, and fair judgment and insight (Exhibit 11F).

(Admin. Tr. 24).

Plaintiff argues that in the above-quoted explanation the ALJ failed to sufficiently explain his consideration of the factors set forth in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. As noted by the Commissioner, however, 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 are not applicable in this case. *See* 20 C.F.R. § 404.1527 (explaining that this regulation is applicable for claims filed before March 27, 2017, and that 20 C.F.R. § 404.1520c is applicable for claims filed on or after March 27, 2017); *see also* 20 C.F.R. § 416.927 (same). Plaintiff's applications in this case were filed on March 11, 2019. Therefore, the ALJ

properly applied 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c when evaluating the medical opinion evidence in this case.

To the extent Plaintiff argues that the ALJ's explanation is insufficient under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, I am not persuaded. The ALJ sufficiently explained that the opinions by CRNP Hammarberg and NP Delgado were not consistent with or supported by the record. Furthermore, my review of that record confirms that this assessment is supported by substantial evidence.

I also note that, in the RFC assessment, the ALJ limited Plaintiff to the performance of simple, routine tasks with only occasional (approximately two hours per day or less) interaction with the public and supervisors. The hypothetical question posed to the VE also limited Plaintiff to no more than occasional contact with co-workers. Therefore, the ALJ did account for a significant degree of social limitation, and attention and concentration deficits.

2.   Whether the ALJ's Assessment that Dr. Kneifati's Opinion was "Not Persuasive" is Supported by Substantial Evidence

Plaintiff alleges that she has difficulty sitting, standing, and walking due to bilateral knee arthritis. The ALJ concluded that Plaintiff's knee arthritis was medically determinable but non-severe. In doing so, the ALJ explained:

On January 2, 2014, the claimant's primary care provider noted her complaints of knee pain, right more than left with driving and walking

around and with the cold. She presented with no edema, no patella laxity, and negative maneuvers (Exhibit 1F). On September 9, 2019, the claimant complained of acute left knee pain after walking down a hill while moving her daughter into college. She presented with tenderness at the top of the patella but with no laxity and negative maneuvers. She [was] given exercises for her likely strain with arthritis and to follow-up for further evaluation if she had no improvement (Exhibits 1F and 9F). At the claimant's October 8, 2019 consultative medical examination, she complained of a history of right knee pain and recent left knee pain due to an injuring [sic] it six weeks previously. She was found to present with a normal, unassisted gait, tenderness at both knees but with no evidence of joint deformity, and 5/5 strength in both lower extremities. Her left knee x-rays performed that day showed no evidence of acute fracture, dislocations, or destructive bony lesion and showed that the joint spaces appeared to be within normal limits (Exhibit 4F). Thus, medical evidence of record supports a finding that these impairments have not caused more than minimal limitation in the ability to perform basic work activities for 12 consecutive months.

(Admin. Tr. 15).

On October 8, 2019, Dr. Kneifati examined Plaintiff and provided a report and medical source statement about Plaintiff's ability to do physical work-related tasks. In his examination report Dr. Kneifati noted that Plaintiff reported her pain level as 7 out of 10. (Admin. Tr. 473). During the examination, however, Dr. Kneifati observed that:

> The claimant appeared in no acute distress. Gait normal. She had some difficulty standing toes and heels/walk toes and heels. Squatting limited to 35%. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.

(Admin. Tr. 474). Dr. Kneifati also observed that, while Plaintiff had tenderness in both knees, there was no joint deformity, both joints were stable, there was no redness, no heat, no effusion, no edema, no atrophy, and that strength and reflexes were normal. (Admin. Tr. 475). An X-ray of Plaintiff's left knee taken that day was normal. (Admin. Tr. 478).

In his medical source statement, Dr. Kneifati assessed, among other things, that Plaintiff could: sit for up to three hours at one time, for a total of four hours per eight-hour workday; stand two hours at one time, for a total of three hours per eight-hour workday; and walk for up to one hour at a time, for a total of two hours per eight-hour workday. (Admin. Tr. 480). Dr. Kneifati identified Plaintiff's "knee pain" as the only clinical finding that supported these limitations. *Id.*

The ALJ found that Dr. Kneifati's opinion was "not persuasive." In doing so, he explained:

> This opinion is not persuasive. While Dr. Kneifati's opinion regarding the claimant's ability to lift and carry is consistent with the medical evidence of record, his **opinion regarding her abilities to sit, stand, and walk in addition to his other findings secondary to her reported knee pain/arthritis is not consistent with the objective medical evidence of record, including his own exam findings.** As noted above, the claimant's left knee x-ray showed no abnormal findings, and she presented with a normal gait, no evident joint deformity and with her joints stable, normal reflexes, no sensory deficits, and 5/5 strength in her upper and lower extremities (Exhibit 4F).

Page 35 of 51

*Id.* (emphasis added).

Plaintiff argues that the ALJ "erred in failing to consider the limitations set forth by the Consultative Exam Physician, Dr. Kneifati, who is the only medical opinion who provides exertional limitations for Claimant, which would render the Claimant unable to sustain competitive employment, per the Vocational Expert, as a result of his findings regarding Claimant's ability to walk/sit/stand." (Doc. 19, p. 24). Based on the above-quoted paragraph, I find that the ALJ did consider Dr. Kneifati's assessment about Plaintiff's ability to sit, stand and walk, and discounted that assessment. Furthermore, having reviewed Dr. Kneifati's opinion, the ALJ's stated rationale for discounting the sitting/walking/standing limitations, and the evidence cited in support of that conclusion, I find that the ALJ's assessment is supported by substantial evidence.

I also note that the hypothetical question posed by the ALJ accounts for Plaintiff being permitted to sit and stand "at will." Thus, even if I found that this limitation were improperly discounted, the error would be harmless as the ALJ's conclusion that Plaintiff could perform other work is still supported by substantial evidence in the record.

D.   WHETHER THE ALJ FAILED TO INCORPORATE ALL CREDIBLY
     ESTABLISHED LIMITATIONS CAUSED BY PLAINTIFF'S SEVERE
     IMPAIRMENTS IN THE RFC ASSESSMENT

Plaintiff argues that the ALJ should have, but did not, incorporate limitations

involving Plaintiff's deficits adjusting to changes, interacting with coworkers,

remaining on task, need for unscheduled breaks, and anticipated rate of

absenteeism. Specifically, Plaintiff contends:

> There was nothing in the RFC set forth by the ALJ to address
> Claimant's ability to (1) adjust to changes in the routine work setting,
> (2) to address interactions with co-workers, (3) the need for
> unscheduled breaks, (4) her ability to remain on task and (5) expected
> rate of absenteeism. (Admin Tr. 17-24). The RFC from the ALJ does
> not address all of Claimant's nonexertional and exertional limitations,
> as confirmed by the medical records, testimony from Claimant,
> opinions from treating sources and even the Physical Consultative
> Exam from Dr. Kneifati.
>
> Claimant's medical records reveal the following regarding limitations
> from Claimant's mental-health related disorders: (1) added stress with
> school, (2) difficulty concentrating, with horrible focus, (3) being
> overwhelmed with racing thoughts, (4) feeling shaky, (5) impaired
> memory upon examination, (6) periods of worsening anxiety and
> depression, (7) extended participation in the Adult Day Program at
> Philhaven, (8) "sky high" anxiety, (9) notes of treatment confirming
> hallucinations, (10) periods of profuse sweating, (11) periods of
> isolation and difficulty getting out of bed, and (12) per her psychiatric/
> therapy records, a clear pattern of being up and then down,
> characterized by periods of improvement, and then followed by
> worsening symptoms. (Admin Tr. 271, 282, 285-287, 293, 430, 433-
> 435, 503, 545, 589, 685, 818-828, 838, 858, 868, 898-899, 926, 930,
> 932, 940, 946, 980-985, 993, 997, 1001 and 1021). In fact, a review of
> many of Claimant's notes of treatment indicate that she is suffering
> from issues related to all of her identified and diagnosed severe

mental-health impairments at the same time, which, if properly considered cumulatively, would keep her from being able to sustain work on a competitive level.

Claimant's testimony regarding these same issues, which was consistent with her medical records, is as follows: (1) she needs a GPS to drive even in a local area, (2) she cannot concentrate, and when she watches television or reads a books she cannot follow the plot, and needs to go over it again, (3) she does not get along with non-family, (4) she had trouble with concentration, racing thoughts, and felt overwhelmed at school, (5) she took off 4 to 5 semesters from law school, (6) she missed a lot of classes, as she would have a panic attack when arriving at school and then she would leave, (7) medications did not alleviate her mental-health issues, and made her tired or forgetful, (8) periods of increased fatigue and others where she was fidgety, (9) shaking that makes it hard to use a computer, (10) constant anxiety and worry, (10) isolating herself, as she sometimes gets tearful around people or cannot stand to be around them, (11) flashbacks from traumatic events, (12) when she gets stressed she cannot do anything, (13) she cycles between manic and depressed days, and cannot sit still on manic days, and (14) panic attacks several times per week. (Admin Tr. 42-62 and 226-233). Clearly, the records of Claimant's mental-health treatment, Claimant's testimony, and the opinions of her treating sources are all consistent regarding these same issues, and as a result, the ALJ should have applied additional non-exertional limitations in terms of Claimant's RFC, which as stated above, in terms of her ability to remain on task, need for unscheduled breaks, and rate of absenteeism, would render her unemployable over a period of time. These limitations would be in addition to the numerous marked limitations noted by Claimant's treating sources.

The ALJ failed to consider the impact of Claimant's documented difficulty with concentration (even while attending school) and horrible focus issues, feeling overwhelmed, racing thoughts, inability to sleep, low frustration tolerance, frequent chest pain with anxiety, being fidgety, shaky and restless, issues with fatigue, anxious mood and affect, being tearful often, inability to be around people, periods of insomnia and hypersomnia, periods of anhedonia, feelings of

helplessness and hopelessness, isolating herself, anger issues, panic attacks, memory issues, hallucinations and low motivation. (Admin Tr. 282, 285-287, 293-295, 301, 435-437, 443-445, 447-450, 452-457, 493, 499, 520-523, 527, 574, 589-590, 626-629, 687-688, 694, 795 and 799-801). These conditions and related limitations are the reason why it took Claimant seven years to graduate from law school , which is an accommodation that was needed as she could only focus enough to take one class at a time, and although she graduated, the accommodations to get he through school are not indicative of someone who can work on a sustained basis. (Admin Tr. 24-25 and 39-40). The ALJ also improperly failed to consider the impact of Claimant's extended participation in an Adult Day Program for her mental health related issues, her need to take medical leaves of absence from school, and her inability to complete a three year school program on time, thus requiring her to go to school for seven years to obtain her degree, and the correlative impact upon Claimant's ability to remain on task for a sufficient percentage of the workday to remain employable.

It should also be noted that Claimant continues to live with her parents, due to her inability to live on her own, and the needs for emotional, physical and financial support. (Admin Tr. 41). In fact, per the ALJ, Claimant has no past relevant work. (Admin Tr. 25 and 43).

Based upon the consistency between Claimant's medical records and Claimant's testimony regarding the limitations she has from her mental health related disorders, there should have been some consideration by the ALJ in Claimant's RFC, as is relates to her ability to remain on task, need for unscheduled breaks, and absenteeism from work, due to evidence on ongoing frequent panic attacks, which occur without specific triggers, Claimant's agoraphobia, with fear and lack of desire to leave her residence and the fact that Claimant's concentration is clearly impaired, all of which combined to cause Claimant to have a work history where she has never remained at any job for a significant period of time. In particular, the ALJ fails to consider the cumulative impact of all of these identified severe mental-health related impairments in combination, and how they would together impact Claimant's RFC on

a sustained basis, in addition to physical limitations noted by the Physical Consultative Exam Physician, Dr. Kneifati.

Pursuant to the holding in *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) an ALJ "must build an accurate and logical bridge from the evidence to their conclusion." Based upon the above, the ALJ has failed to build this bridge from the evidence noted above to his conclusions, as it relates to Claimant's RFC, as he has failed to include some significant limitations that are clear from the record in this matter.

(Doc. 19, pp. 13-17) (internal footnotes omitted).

In response, the Commissioner argues that the ALJ acknowledged the evidence at issue in the decision. Specifically, the Commissioner contends:

Plaintiff argues that the ALJ overlooked her frequent complaints of uncontrolled depression and anxiety, the opinions of her treating providers, and the fact that it took her an unusually long time to complete law school due to disruptions from her impairments (P. Bf. 13-17). However, the ALJ acknowledged this evidence, specifically noting Plaintiff's alleged symptoms of mood swings, flashbacks, panic attacks, difficulty sleeping, difficulty getting along with others, feeling overwhelmed, and difficulty handling changes in routine (Tr. 17-18). Nevertheless, contrary to Plaintiff's claims, the ALJ was not required to credit her subjective complaints over other evidence in the record. *See* 20 C.F.R. §§ 404.1529(b); 416.929(b); SSR 16-3p, 2016 WL 1119029 (Oct. 15, 2017) (symptoms alone are insufficient to establish disability); see also 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence.") (emphasis added).

Moreover, it was the responsibility of the ALJ – not of Plaintiff himself, nor of this Court – to weigh the evidence and come to a conclusion regarding the extent of Plaintiff's limitations. *See* 20 C.F.R. § 404.1546(c); 416.946(c); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (explaining that the ALJ never cedes his role as the

final arbiter of a claimant's RFC). To the extent there were inconsistencies in the record between the objective evidence and Plaintiff's subjective complaints, those inconsistencies were for the ALJ to resolve, and "great deference" is afforded the ALJ's factual findings. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007) (quoting *Atl. Limo, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001); *see also Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating the court should "ordinarily defer to an ALJ's credibility determination"); *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) (the ALJ's weighing of the claimant's subjective statements is "virtually unreviewable on appeal.").

Plaintiff vaguely argues that the ALJ should have included additional limitations in the RFC pertaining to her ability to adjust to changes in routine, interact with coworkers, remain on task, and the need for unscheduled breaks and expected rate of absenteeism (P. Bf. 7, 12). While Plaintiff has alleged generally that additional mental limitations were warranted in these categories, she has not identified any specific additional limitations that the ALJ should have included in the RFC. *See Kuntz v. Colvin*, 2016 WL 6634942, at * 9 (M.D.P.A. Sept. 30, 2016) ("Plaintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC.") (citing *Rutherford*, 399 F.3d 546, 552-53). Furthermore, it is Plaintiff's burden to show that any additional limitations were warranted, and her vague references to her subjective complaints does not meet that burden. *See Laicha v. Kijakazi*, 2021 WL 3929739, at * 9 (M.D.P.A. Sept. 2, 2021) ("Laicha has failed to indicate the additional limitations that should have been included in the RFC and fails to provide any evidentiary support demonstrating the need for additional functional limitations."); *Malloy*, 306 F. App'x at 764.

In sum, the ALJ fully supported his conclusion that Plaintiff would be able to perform light work with additional limitations, including a limitation to simple and routine tasks involving only occasional interaction with the public and supervisors (Tr. 17). In so finding, the ALJ implicitly rejected any additional limitations with regard to adjusting to changes in routine, interacting with coworkers, remaining

on task, or any excessive breaks or absences. *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008) (noting that the RFC determination is the "exclusive responsibility" of the ALJ, and that "the ALJ need include in the RFC only those limitations which he finds credible."). He supported the RFC with direct references to the mental status examination findings, reports of Plaintiff's functioning, and the opinions of Dr. Trogner, Dr. Small, and Dr. Williams (Tr. 17-26). Plaintiff's arguments to the contrary are an invitation to reweigh evidence, and must be rejected by this Court. *See Hartranft*, 181 F.3d at 360; *Biestek*, 139 S. Ct. at 1157 (emphasizing that the substantial evidence bar is "not high," and the reviewing court should "defer to the presiding ALJ, who has seen the hearing up close.").

(Doc. 22, pp. 14-17) (internal footnote omitted).

Plaintiff argues that the limitations set forth in the Hammarberg, Delgado, and Kneifati opinions should have been credited because they are consistent with certain portions of Plaintiff's treatment records. In support of her position, Plaintiff cites to the following records: Admin. Tr. 271, 282, 285-287, 293-295, 301, 430, 433-437, 443-445, 447-450, 452-57, 493, 499, 503, 520-523, 527, 545, 574, 589-590, 626-629, 685, 687-688, 694, 795, 799-801, 818-828, 838, 858, 868, 898-899, 926, 930, 932, 940, 946, 980-985, 993, 997, 1001 and 1021. These records are composed mainly of Plaintiff's statements about her symptoms to medical providers, and check-box assessments noting that Plaintiff had mild symptoms but that her depression and/or anxiety was worsening.

In the RFC assessment, the ALJ limited Plaintiff to simple, routine tasks. (Admin. Tr. 17). This limitation to "routine" tasks is understood as limiting

Plaintiff to work that does not require a significant number of changes. Plaintiff argues that this limitation does not adequately account for her difficulty adjusting to changes. This limitation appears to originate in CRNP Hammarberg and NP Delgado's medical source statement. (Admin. Tr. 822) (finding "marked" difficulty adapting to changes); (Admin. Tr. 827) (finding "marked" difficulty adapting to changes). However, as explained in Section IV(C)(1) of this Opinion, CRNP Hammarberg and NP Delgado's opinions were properly discounted. Furthermore, Doctors Small and Williams assessed that Plaintiff would have no adaptation limitations, and would be able to meet the basic mental demands of simple, routine tasks on a sustained basis despite her impairment. (Admin. Tr. 81, 99). Dr. Trogner assessed that Plaintiff would have only mild difficulties responding to changes in a routine work setting. (Admin. Tr. 433). Accordingly, I find that the ALJ's decision to exclude this limitation from the RFC assessment is supported by substantial evidence.

In the RFC assessment, the ALJ limited Plaintiff to jobs that require no more than "occasional" interaction with the public and supervisors. I note, however, that the actual hypothetical posed to the VE also included a limitation to only "occasional" interaction with co-workers. Plaintiff argues that the ALJ's RFC assessment does not adequately account for her inability to interact with

coworkers, ignoring that the hypothetical question and vocational testimony account for such a limitation. Accordingly, I find that the ALJ's failure to address Plaintiff's ability to interact with co-workers in the RFC is harmless error, because Plaintiff could still perform the jobs identified in the ALJ's decision if limited to only "occasional" interaction with coworkers.

In the RFC assessment, the ALJ limited Plaintiff to work that would involve no more than "simple" and "routine" tasks. Plaintiff argues that the RFC does not adequately account for her inability to remain on task. CRNP Hammarberg assessed that Plaintiff would have "extreme" difficulty avoiding distractions while working but would only have "moderate" difficulty completing tasks in a timely manner. (Admin. Tr. 822). NP Delgado assessed that Plaintiff would have "marked" difficulty avoiding distractions, but would only have "moderate" difficulty completing tasks in a timely manner. (Admin. Tr. 827). Doctors Small and Williams assessed that Plaintiff had "moderately limited" ability to maintain attention and concentration for extended periods. However, they concluded that Plaintiff had no other sustained concentration or persistence limitations. (Admin. Tr. 80, 98). Dr. Trogner observed that Plaintiff's attention and concentration was intact, and that she was able to perform counting, simple calculations, and serial 7s from 100. He assessed that Plaintiff would have only mild difficulty understanding,

Page 44 of 51

remembering, and carrying out simple instructions. (Admin. Tr. 430, 432). Similarly, no concentration or attention deficits were noted in the treatment records summarized in Section IV(C)(1) of this opinion. Accordingly, I find that the ALJ adequately accounted for the credibly established concentration deficits.

In the RFC assessment, the ALJ did not include any accommodation for unscheduled breaks beyond those customarily provided in the work setting. Plaintiff argues that she needs additional unscheduled breaks. CRNP Hammarberg assessed that Plaintiff would have marked to extreme difficulty working a full day without needing more than the allotted number or length of rest periods per day. (Admin. Tr. 22). NP Delgado assessed that Plaintiff would have "marked" difficulty working a full day without needing more than the allotted number or length of rest periods during the day. (Admin. Tr. 827). Neither Hammarberg nor Delgado suggest how many breaks would be needed or how long those breaks should be. Doctors Small and Williams assessed that Plaintiff would have no significant limitation performing at a consistent pace without an unreasonable number and length of rest periods. (Admin. Tr. 80-81, 98). Considering the opinions of Doctors Small and Williams as well as the treatment records summarized in Section IV(C)(1) of this opinion, the ALJ's decision to exclude a limitation allowing for additional rest breaks is supported by substantial evidence.

The ALJ did not include any accommodation for absenteeism in the RFC assessment. The VE did not offer any testimony about the maximum tolerance for absences in a customary work setting. Plaintiff argues that the ALJ failed to adequately account for her anticipated rate of absenteeism. CRNP Hammarberg assessed that Plaintiff would be absent from work approximately five days per month. (Admin. Tr. 823). NP Delgado assessed that Plaintiff would be absent from work between four and six days per month. (Admin. Tr. 828). Doctors Small and Williams assessed that Plaintiff would have no significant limitation completing a normal workday and workweek without interruptions from psychologically-based symptoms. (Admin. Tr. 80-81, 98). Considering the opinions of Doctors Small and Williams as well as the treatment records summarized in Section IV(C)(1) of this opinion, the ALJ's decision to exclude a limitation to account for four to six absences each month is supported by substantial evidence.

E.  WHETHER THE ALJ FAILED TO INCORPORATE ALL OF PLAINTIFF'S CREDIBLY ESTABLISHED LIMITATIONS  FROM HER NON-SEVERE IMPAIRMENTS IN THE RFC ASSESSMENT

Plaintiff argues that the ALJ failed to account for certain symptoms caused by non-severe impairments. Specifically, Plaintiff contends:

> Despite records setting for ongoing treatment for arthritis in her knees, back pain, right shoulder pain, GERD and insomnia, the ALJ provides no exertional limitations in his findings regarding Claimant's RFC for these disorders. In addition, at Step 3 of the ALJ's Decision, he offers

little discussion regarding these impairments. (Admin Tr. 14-15). These conditions and limitations were confirmed by Claimant or her treatment records, as follows: (1) some days she does not sleep at all, (2) ongoing issues with knees, back and neck, (3) limitations due to knee pain and osteoarthritis, (4) one hour of sleep per night for a two month period, (5) almost daily knee pain, (6) a diagnosis of insomnia, and (7) pain worsening throughout the day, despite inactivity. (Admin Tr. 50-62, 287, 301, 329, 377, 408, 482-483, 521, 545, 589-590, 682, 685, 687-688, 699-700, 758, 782 and 799-801).

Clearly, these conditions cause more than a minimal effect upon Claimant's ability to do basic work activities, and are more than a slight abnormality. Consideration of exertional limitations in this case is of particular importance, due to the opinions of Dr. Kneifati. Based upon the above, the ALJ erred in failing to consider any exertional limitations in this matter, as it relates to what were incorrectly identified as "non-severe" impairments. In addition, the ALJ fails to consider how Claimant's insomnia would impact her ability to remain on task.

(Doc. 19, pp. 19-20).

In response, the Commissioner argues that the RFC assessment limiting Plaintiff to light work with additional postural and environmental limitations accounts for the limitations that result from Plaintiff's non-severe impairments. Specifically, the Commissioner contends:

Plaintiff argues that the ALJ should have found her alleged knee pain, back pain, right shoulder pain, GERD and insomnia to be severe impairments (P. Bf. 17-20). With regard to the alleged physical conditions, Plaintiff overlooks the minimal objective evidence in the record pertaining to these complaints. More importantly, Plaintiff overlooks that the RFC assessment for light work with additional postural and environmental limitations more than adequately accounted for any limitations stemming from these conditions. *See*

*Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) (even if the ALJ erred by finding a particular impairment non-severe, such error is harmless if he proceeds on with the sequential evaluation) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). As for her alleged insomnia, Plaintiff overlooks that the ALJ discussed this symptom in the context of her other mental impairments (Tr. 17, 21). Accordingly, Plaintiff's arguments fail.

As for Plaintiff alleged knee pain and GERD, the ALJ found these conditions to be non-severe, noting that physical examination findings and imaging had been largely unremarkable with regard to the knees, and that Plaintiff's GERD symptoms were controlled with medications (Tr. 15; Tr. 378 (showing no tenderness and negative maneuvers in the knee), Tr. 404 (noting improvement in GERD symptoms), Tr. 478 (normal x-ray of the left knee)). Thus, the ALJ properly supported his conclusion that Plaintiff's knee pain and GERD were non-severe. Nevertheless, the RFC for light work with additional postural and environmental limitations adequately accounted for any limitations that could be attributed to knee pain and GERD (Tr. 17). *See Rutherford*, 399 F.3d at 552-53 (because the limitations in the RFC assessment would accommodate the impairment omitted at step two, any error in finding the impairment non-severe was harmless). Moreover, Plaintiff has not alleged any specific additional limitations that could be warranted by these relatively mild conditions, for which the record shows no significant diagnostic work-up or treatment. *See Garrett*, 274 F. App'x at 163 (3d Cir. 2008) (the RFC determination is the "exclusive responsibility" of the ALJ, and "the ALJ need include in the RFC only those limitations which he finds credible.").

Similarly, the record shows minimal complaints and treatment for back and right shoulder pain. As previously discussed, the record shows one complaint of back pain in October 2016, and one complaint of right shoulder pain in December 2019, followed by approximately one month of physical therapy, after which Plaintiff reported to be greatly improved (Tr. 329-31, 682-83, 755-91). On this record, Plaintiff has not established that these conditions are severe

impairments, which must last, or be expected to last, for a minimum of 12 months. 20 C.F.R. §§ 404.1509, 416.909.

While Plaintiff faults the ALJ for not discussing her alleged back pain and shoulder pain, these conditions are only minimally evidenced in the record, and there is no requirement that the ALJ discuss "every tidbit" of evidence included in the record. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). This is especially true where, as here, the record on its face does not show the alleged conditions to meet the threshold requirements of severity. See id. at 133 (finding that the evidence the ALJ failed to discuss was not "notable" and did not support any functional limitations). Moreover, as with Plaintiff's alleged knee pain and GERD, her alleged back pain and left shoulder pain were adequately accommodated by the light RFC with additional postural and environmental limitations (Tr. 17). *See Rutherford*, 399 F.3d at 552-53.

It is worth noting that Plaintiff's counsel mentioned these specific physical impairments at the hearing, and the ALJ responded that the light RFC would "cover" these impairments (Tr. 62). Thus, there should be no doubt that the ALJ considered each of the alleged physical impairments, but that he found the limitations in the RFC sufficient to accommodate them (Tr. 17, 62).

As for Plaintiff's alleged insomnia, the ALJ discussed her complaints of poor sleep at multiple points in his decision (Tr. 17, 21). However, while Plaintiff did allege poor sleep at times in the record, the record is replete with numerous other instances in which Plaintiff reported good sleep (Tr. 501, 511, 515, 523, 527, 852, 860, 869, 873, 881, 885, 889, 893, 901, 905, 910, 913). Thus, while the ALJ acknowledged Plaintiff's subjective complaints, he considered them in the context of the record as a whole and concluded, on balance, that the limitations in the RFC assessment were sufficient to accommodate her mental impairments (Tr. 17). Plaintiff has not shown how her intermittent insomnia would cause additional limitations beyond those included in the RFC. *See Rutherford*, 399 F.3d 546, 552-53; *Garrett*, 274 F. App'x at 163.

(Doc. 22, pp. 18-22).

I am not persuaded by Plaintiff's argument that the ALJ failed to account for additional limitations caused by her non-severe impairments of GERD and knee arthritis. However, Plaintiff has not cited any evidence that suggests that these cause any degree of limitation beyond what is already accounted for in the hypothetical question posed to the VE (i.e., light work with a sit/stand opinion and occasional postural activities).

Contrary to Plaintiff's argument, neither insomnia nor back pain were alleged as impairments in this case. Although treatment records suggest Plaintiff experienced insomnia as a symptom of her mental impairments, it was never alleged as a standalone impairment. (Admin. Tr. 220) (alleging impairments of bipolar, anxiety, and PTSD). Although Plaintiff's counsel briefly mentioned back pain as being established by Dr. Kneifati's opinion during the administrative hearing, Dr. Kneifati did not list any back impairment as a diagnosis and the ALJ did not identify or evaluate back pain as an impairment. (Admin. Tr. 62, 476). Accordingly, I am not persuaded that the ALJ failed to address symptoms related to these impairments because the "insomnia" was addressed as a symptom of Plaintiff's mental impairments and Plaintiff has not shown that the back pain was alleged by Plaintiff or diagnosed by a medical source.

V.     CONCLUSION

I find that Plaintiff's request for relief will be DENIED as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of the Acting Commissioner of the Social Security Administration.

(3) An appropriate order will be issued.

Date: September 9, 2022                    BY THE COURT

                                           _s/William I. Arbuckle_
                                           William I. Arbuckle
                                           U.S. Magistrate Judge